People of the State of Illinois, Plaintiff-Appellee, v. James E. O'Neal, Defendant-Appellant.

Gen. No. 52,987.

First District, Third Division.

December 18, 1969.

119

Gerald W. Getty, Public Defender of Cook County, of Chicago (George L. Lincoln and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane, Assistant State's Attorney, of counsel), for appellee.

MR. JUSTICE McNAMARA delivered the opinion of the court.

Defendant, James O'Neal, was charged with two counts of armed robbery and two counts of aggravated battery. After a jury trial, defendant was found guilty on all four counts. He was sentenced to terms of 20 to 40 years on each count of armed robbery, and to terms of 5 to 10 years on each count of aggravated battery, all sentences to run concurrently.

Defendant appeals, contending that the opinion evidence of the ballistics expert was improperly admitted; that evidence of a separate and unrelated crime was improperly introduced; that certain prejudicial hearsay evidence was erroneously introduced; that defendant was deprived of the assistance of counsel at the preliminary hearing; that the court erred in imposing separate sentences for crimes arising out of the same conduct; and that the sentences imposed on defendant were excessive and should be reduced.

On February 26, 1967, at about 10:30 p. m., after a telephone call, Leslie Johnson and Francis Kelly, the complaining witnesses, drove to downtown Chicago to a restaurant to purchase some marijuana. At the res-

taurant they met defendant and another man identified as Bill. After a conversation, the four men proceeded in Kelly's car to the south side to pick up the marijuana. At their destination, Bill was given forty dollars by the complaining witnesses and left the car to get the marijuana. After waiting for Bill for a while, defendant suggested that they wait inside the building. After they entered the building hallway, defendant drew a gun, and ordered the complaining witnesses to take out their wallets and raise their hands. Defendant then shot Johnson in the arm, picked up the wallets, and left the building. Johnson and Kelly went to a hospital. At the hospital, Johnson told the police that he was the sole victim of the crime, and Kelly did not report to the police that he was robbed until several days later. At the hospital, a police officer removed a spent bullet from Johnson's overcoat, and identified the bullet in court. Police officers arrested defendant on March 5, 1967, and found a gun on his person. At trial Johnson identified that gun as the one used by defendant on the night in question.

Officer Burt Nielsen, a firearms identification technician employed by the Chicago Police Department Crime Laboratory, testified as to his duties at the crime laboratory and his qualifications as a ballistics expert. He also explained laboratory ballistics procedures. When a weapon is received at the laboratory it is classified as to type, caliber, make and model. Each gun has class characteristics common to its particular make and model. In addition, each gun has its own individual characteristics. In constructing a gun barrel, the barrel is drilled, reamed, and then a cutting tool is used to place spiral lanes and grooves into the barrel. This process, which consists of tearing metal from metal through harder metal, causes small microscopic imperfections in the bore of the gun. As a bullet is fired through the gun barrel, it picks up these imperfections

121

left by the cutting tool. After the gun is received at the laboratory, if operable, it is fired into a bullet recovery box. The bullet in question is then compared with the test bullet under a comparison microscope.

A comparison microscope consists of two identical microscopes mounted side by side and connected by an optical bridge. That bridge has a single eyepiece with a split field of view, enabling the operator to see half the image under the right microscope and half the image under the left microscope. The bullets are mounted on spindles which in turn are on stages and these stages can be moved up and down.

Nielsen identified the gun taken from the defendant as the one he received at the laboratory on March 7, 1967. He identified the bullet found in Johnson's overcoat as the one he received on February 28, 1967. He fired the weapon twice on March 9, and following the aforementioned procedures, he compared the two test bullets with the one in question. On the basis of the tests, he determined that the bullets were fired from the same gun. Photomicrographs of the bullets are never taken at the Chicago Police Department laboratory.

Defendant first contends that the opinion evidence of the ballistics expert was improperly admitted. Defendant apparently concedes the witness's expertise in the field of ballistics. Defendant also recognizes that a properly qualified ballistics expert may offer his opinion as to whether a bullet was fired from a gun in question. People v. Fisher, 340 Ill 216, 172 NE 743 (1930). However, defendant argues that in the instant case there was no factual basis in the evidence to support the expert's conclusions that the basis of his opinion was not placed before the jury, that either the test bullets, photomicrographs, or an explanation of the particular similarities should have been offered into evi-

dence; and that as a result defendant's right to proper cross-examination was improperly restricted.

 The function of an expert witness is to draw inferences from facts which the jury is ordinarily unqualified to draw. Schwartz v. Peoples Gas Light & Coke Co., 35 Ill App2d 25, 181 NE2d 826 (1962). However an expert opinion must be based upon facts in evidence. Kanne v. Metropolitan Life Ins. Co., 310 Ill App 524, 34 NE2d 732 (1941) ; Carlson v. New York Life Ins. Co., 76 Ill App2d 187, 222 NE2d 363 (1966). The admissibility of expert testimony is conditioned upon the laying of a proper factual foundation. Marshall v. First American Nat. Bank of Nashville, 91 Ill App2d 47, 233 NE2d 430 (1968). Where the expert bases his opinion upon facts personally known to him, he must testify to those facts. Department of Public Works and Buildings v. Oberlaender, 92 Ill App2d 174, 235 NE2d 3 (1968). The reason for this requirement is to act as a safeguard for the reliability of the expert's testimony. Marshall v. First American Nat. Bank of Nashville, supra. See 2 Wigmore on Evidence (3rd ed 1940, § 417).

 We find that the expert's opinion in the instant case was properly admitted. The witness testified that he received the gun and bullet in question at the laboratory; and the gun and bullet were introduced into evidence. He also testified that he fired the gun twice, and that he compared the test bullets with the one in question. He testified to the procedure generally used and to the reasons why a comparison of bullets will reveal the identity of the gun which fired them. On the basis of these tests, he was of the opinion that the gun found on defendant's person fired the bullet found in the complaining witness's coat. The expert witness set forth the reasons for his conclusion, and it was for the triers of fact to determine how much weight

to give to his testimony. It should also be noted that the bullet and gun in question were introduced into evidence, and that defendant was not foreclosed from conducting similar tests, either prior to or during trial.

Other jurisdictions also have allowed the conclusions of a ballistics expert even though demonstrative evidence had not been introduced. In McKenna v. People, 124 Colo 112, 235 P2d 351 (1951), the court held that the ballistic expert's testimony was proper without the introduction of photomicrographs, stating that the latter were inaccurate to some degree. In State v. Wojculewicz, 140 Conn 487, 101 A2d 495 (1953), the court held that the introduction of the test bullet is not essential to the admissibility of the expert's testimony. And in People v. Buckowski, 37 Cal2d 629, 233 P2d 912 (1951), it was held that the oral testimony of the ballistics expert as to the bullets in question was sufficient to support his conclusions.

Defendant next argues that the testimony of a witness concerning a separate and unrelated crime constituted prejudicial error.

Over objection of defendant, Officer Correntano was allowed to testify that, when he arrested defendant, a gun was found on defendant's person. After the officer testified that he found the gun on defendant and saw it again at the police station, the prosecutor, in establishing the chain of possession of the gun, then asked when he next saw the gun. The officer replied that he next saw it "in court on an unlawful use of weapons." The trial judge, while denying a defense motion for a mistrial, stated that the remark was practically inaudible, and directed the jury to disregard the remark if they heard it. The judge also instructed the witness to confine himself to answering the questions. Prior to the officer's taking the stand, the defense offered to stipulate that the gun was found on defendant's person, but the State rejected the proposed stipulation.

 While introduction into evidence of separate and unrelated offenses is generally prejudicial error, People v. Peto, 38 Ill2d 45, 230 NE2d 236 (1967), evidence of another crime is admissible when relevant to the matter on trial. People v. Carter, 38 Ill2d 496, 232 NE2d 692 (1967). Facts and circumstances attending the arrest of an accused may be introduced into evidence where they tend to connect defendant with the commission of the offense for which he is on trial. And evidence which tends to prove any fact material to the issue on trial is properly introduced even though it proves defendant guilty of another crime. People v. Tomaszewski, 406 Ill 346, 94 NE2d 154 (1950).

 In the instant case, the State was entitled to introduce the facts and circumstances concerning the arrest of the defendant and his possession of the gun. The gun was an important piece of evidence, connecting the defendant with the charges for which he was being tried. The record reveals that the assistant State's Attorney was careful in not going into any additional detail concerning the arrest and seizure of the gun. His question to the officer as to when next the latter saw the gun was proper. The trial judge promptly struck the unresponsive answer of the witness and directed the jury to disregard it, indicating at the same time that he did not think the jury had heard the remark. We find that evidence concerning the arrest of defendant while in possession of the gun was competent. We also find that the unresponsive answer of the officer, particularly in view of the prompt action of the trial judge, did not constitute prejudicial error.

Defendant next contends that the State erroneously was allowed to introduce certain hearsay evidence by indirection. On cross-examination, defense counsel asked Kelly if he at any time had ever told anyone that he had been robbed on February 27. Kelly stated that he so informed Officer Gardner on March 1 during a tele-

125

■■■■■■

phone conversation. Officer Gardner was not called as a witness by the State, but Officer Friedl was asked by the prosecutor if he had a conversation with Officer Gardner and when that conversation took place. The court sustained a defense objection to a question as to whether Kelly's name was mentioned in that conversation. Defendant argues that this testimony gave the impression that Kelly's testimony that he reported the incident a few days after the crime was corroborated.

■■■ Testimony that out of court conversations took place does not constitute hearsay evidence, although a recital of the contents of such conversations may be. People v. Carpenter, 28 Ill2d 116, 190 NE2d 738 (1963).

■■■ Questioning Friedl as to whether he had a conversation with Gardner was not improper. As we have noted, the court then sustained defendant's objection to the question as to whether Kelly's name was mentioned in that conversation. The asking of such a question, although improper, did not constitute the introduction of prejudicial hearsay evidence. A case cited by defendant, People v. Crews, 42 Ill2d 60, 244 NE2d 593 (1969), is not in point. In that case, the specific content of the conversations was, by indirection, elicited from the witness. That did not occur in the instant case, and we find that no prejudicial hearsay evidence was introduced.

The defendant also argues that the court erred in denying defendant's motion to provide another preliminary hearing at which defendant would have assistance of counsel.

■■■ At preliminary hearing defendant made a request that he be allowed to confer with a public defender. The examining magistrate proceeded to conduct the preliminary hearing and held defendant over to the grand jury without providing counsel. At the time of trial, the defense moved that another preliminary hearing be conducted prior to trial so that defendant would

have counsel. The trial court denied the motion. Defendant argues that a preliminary hearing is a critical stage in a criminal proceeding in Illinois, and that therefore his constitutional right to the assistance of counsel was violated, and also that he was deprived of his right to discovery in the failure to provide counsel.

These contentions have been rejected by the Illinois Supreme Court. People v. Bonner, 37 Ill2d 553, 229 NE2d 527 (1967). In Bonner, the court held that a preliminary hearing in Illinois was not a critical stage in the proceedings, and that therefore it was not necessary that counsel be present, nor was it necessary that a preliminary hearing be conducted.

■ Defendant next contends that the charges of armed robbery and the charges of aggravated battery arose out of the same transaction, and that therefore it was error to impose separate sentences for the aggravated battery charges. In its brief, the State concedes that this is true. Accordingly, the judgments for aggravated battery are reversed.

■ Defendant, without citing any authority, also suggests that the two armed robbery charges constituted one act, thus permitting only one sentence. We find that the armed robberies of Johnson and Kelly were separate and distinct crimes, and that the trial court did not err in imposing separate sentences for each robbery.

Defendant finally contends that the sentences of 20 to 40 years for the armed robberies were excessive, and should be reduced by this court.

■ ■ When the sentences under review are within the statutory limits, as they are in this case, they will not be disturbed unless they constitute a clear departure from fundamental law or are not proportioned to the nature of the offense. People v. Gold, 38 Ill2d 510, 232 NE2d 702 (1967). In the instant case, defendant was found guilty of robbing two men at the point of a

127

gun. As the victims held their arms up, defendant shot one of them, picked up their wallets and fled. We find that the punishment is not disproportionate to the nature of defendant's conduct, and we will not reduce the penalties imposed for the armed robberies.

The judgments and sentences for the armed robberies are affirmed, and the judgments for the aggravated battery are reversed.

Affirmed in part, reversed in part.

DEMPSEY, P. J. and SCHWARTZ, J., concur.