THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MICHAEL JOHNSON, Defendant-Appellant.

(No. 56417; ▮▮▮▮▮▮)

First District (5th Division)—April 27, 1973.

Gerald W. Getty, Public Defender, of Chicago, (Harold Cowen, Michael Weininger, and James J. Doherty, Assistant Public Defenders, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Elmer C. Kissane and James R. Truschke, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE ENGLISH delivered the opinion of the court:

OFFENSE CHARGED

Armed robbery. Ill. Rev. Stat. 1969, ch. 38, par. 18—2.

JUDGMENT

The jury found defendant guilty of armed robbery, and he was sentenced to a term of 5 to 15 years.

CONTENTIONS RAISED ON APPEAL

1. Defendant was denied a fair trial when a police witness for the State told the jury that defendant had a "criminal history," and the judge failed to declare a mistrial, even though he agreed defendant had been prejudiced and that the instruction to disregard had been ineffective.

2. Defendant was denied a fair trial when the judge, rather than de-

clare a mistrial, attempted to cure the error by falsely stating to the jury that this testimony of the State witness was incorrect.

3. Defendant was prejudiced by the prosecutor's use of rebuttal testimony to impeach defendant on a collateral matter.

4. The sentence imposed upon defendant was excessive.

*EVIDENCE*

*Jean Boughton*, for the State:

On Saturday, May 16, 1970, she was working as a ticket agent for the Chicago Transit Authority at the 59th and State Streets elevated station in Chicago. At 11:40 P.M., three black men came up to her booth and stood around as if getting change to pay their fares. The next thing she knew, each one had put a gun in the slot of her booth and defendant told her to open the door and raise her hands. The area was well lighted. She opened the booth and went out, passing defendant by a couple of inches. They ransacked the place looking for money; $22.50 was taken; $10 was hers and the rest belonged to the CTA. Two days later, she went to the police station and, after viewing about 200 photos, identified one as being that of defendant. A few weeks later she picked him out of a police line-up.

*John Dwyer*, for the State:

He had been a member of the Chicago Police Department for 16½ years. On May 16, 1970, at about 10:30 P.M., he responded to a radio call stating a robbery had taken place at the 59th and State "El" station. He talked with Jean Boughton and filed his report.

*Frank Brown*, for the State:

He was the investigating police officer in the case. Two days after the incident, the complaining witness identified defendant's picture from over 100 she had seen. On June 8, 1970, defendant was arrested and identified by Mrs. Boughton at a line-up. The witness was then asked by the State's Attorney:

> "Q. Did you make any attempt to arrest him before that day?
>
> A. Yes, sir, I did. The same day that Miss Boughton came into the office we went out and got an arrest warrant and I got a copy of his criminal history sheet—
>
> Mr. Levin: Objection, your Honor.
>
> The Court: I will sustain the objection.
>
> Mr. Levin: Your Honor, may—
>
> The Court: I will strike the answer and instruct the jury to disregard it."

In chambers, defense counsel moved for a mistrial and a lengthy discussion was held, during which the court stated as follows:

> "The Court: I can tell the jury this defendant has no criminal

history, I can instruct the jury on it. * * * Mr. State's Attorney, I want this defendant to have a fair trial, and I am fearful that perhaps he has been prejudiced in some way by this officer's testimony.

Mr. Phelan (Asst. State's Attorney): Your Honor, I don't think that would be proper in this case. First of all, it is not a fact.

The Court: I don't know what is a fact.

Mr. Phelan: Since it—

The Court: I don't know whether it is a fact or not. What I am trying to do is see that the defendant gets a fair trial.

Mr. Phelan: I agree. I think he should, but I don't think you could have it by telling the jury he has no criminal record. You covered it.

The Court: I don't think that is sufficient.

* * *

Mr. Phelan: I don't think the court should put itself in the position of telling the jury something like that when it isn't a fact.

The Court: I don't know whether it is a fact or not a fact. I do know this, this defendant should be tried upon the evidence that is here, not upon whether he has a criminal history, ever been convicted of any other crime. He should be tried upon the evidence here."

Then, after further discussion, the judge recalled the jury and instructed them as follows:

"The Court: Before we proceed, ladies and gentlemen of the jury, during Investigator Frank Brown's testimony this morning some reference was made by Investigator Brown to a "criminal history." I struck that remark and I instructed this jury to disregard it. I am not sure that my instructing you to disregard it was sufficient. I don't think it was sufficient caution. I now tell the jury that this defendant has no criminal history and has never been convicted of a crime."

*Michael Johnson* was called on his own behalf:

He was 21 years old and on the date of the crime was employed by Chicago Towel Company on the 6:00 A.M. to 3:00 P.M. shift. He usually worked 40 to 45 hours a week. He did not remember where he was at the time of the robbery, but he denied any participation in the crime.

*Larry Conant,* for the State:

He was personnel manager of Chicago Towel Division of F. W. Mead. Over defense objection, he testified that during the week of May 17, 1970, defendant was absent from work on Thursday, May 14, and Friday, May 15.

*OPINION*

■■ Defendant contends that he was denied a fair trial when the judge erred in refusing defendant's motion for a mistrial after the investigating officer referred to defendant's "criminal history sheet." At the time, however, defense objection to the statement was sustained and the judge immediately instructed the jury to disregard the officer's remark. An instruction to disregard evidence ordinarily cures error in its admission. (*People v. Nelson,* 124 Ill.App.2d 280, 260 N.E.2d 251.) This is particularly true when the improper testimony is not directly responsive to the question and is promptly stricken, with an instruction to the jury to disregard it. (*People v. Kirkwood,* 17 Ill.2d 23, 160 N.E.2d 766; *People v. Ogden,* 77 Ill.App.2d 312, 222 N.E.2d 329.) In the present case, the witness' reference to defendant's "criminal history sheet" was not solicited by the State's Attorney's question in a calculated attempt to prejudice the jury. Rather, it appears as an inadvertent remark which went beyond the question asked and was then quickly stricken by the court and the jury was instructed to disregard it. We find that the prompt action by the judge relieved the remark of any substantial prejudicial effect. See *People v. O'Neal,* 118 Ill.App.2d 116, 254 N.E.2d 559.

■■ Next, defendant maintains that defendant was additionally prejudiced by the judge's attempt to correct the earlier mistake by falsely telling the jury that defendant did not have a criminal history and had not been convicted of a crime. Specifically, he argues that the judge was informed in chambers by the State's Attorney that defendant did, in fact, have a criminal record, and in spite of this disclosure, the judge instructed the jury that defendant had no prior "criminal history." However, the record discloses that defense counsel encouraged the judge in giving to the jury the instruction he now complains of, which should preclude him from arguing the point now on appeal. Also, while we cannot condone instructing the jury by the use of an obvious falsehood, it appears to us that the instruction did not prejudice defendant's case, but could only have helped it. Still, defendant cites *Bruton v. United States* (1968), 391 U.S. 123, 88 S.Ct. 1620 and the cases relied on therein to support his argument that the jury was so prejudiced by the first reference to defendant's "criminal history" that the judge's subsequent denial thereof did not remove its prejudicial effect, but compounded it. Not only were the facts in *Bruton* much stronger than in the present case (admission of a co-defendant's confession in a joint trial), but the court in *Bruton* recognized a still currently acceptable principle which we believe clearly applies to the present case when it said:

> "[I]nstances occur in almost every trial where inadmissible evidence creeps in, usually inadvertently. 'A defendant is entitled to

a fair trial but not a perfect one.' [Citation.]" *Bruton v. United States*, 391 U.S. 123 at 135.

See also *People v. Ward*, 32 Ill.2d 253, 204 N.E.2d 741, *cert. denied* 384 U.S. 1022, 86 S.Ct. 1947. Considering the testimony of the witness and the comments of the judge in light of the overall evidence of guilt, we find that they were not a material factor in the conviction. (*People v. Nicholls*, 42 Ill.2d 91, 100, 245 N.E.2d 771, *cert. denied* 396 U.S. 1016, 90 S.Ct. 578.) We further believe that they were harmless in relation to the outcome of the case, and that beyond a reasonable doubt, they did not contribute to the jury's verdict of guilty. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824.

■■■ Next, defendant maintains that he was denied a fair trial when the judge allowed him to be impeached on a collateral matter. He states that the testimony of his former employer's personnel manager stating that defendant had not worked on the Thursday or Friday before the day of the crime was not proper rebuttal to defendant's own statement that he usually worked 40 to 45 hours per week. Proper rebuttal evidence is that which explains, repels, contradicts or disproves material evidence given by defendant. (*People v. Bell*, 328 Ill. 446, 159 N.E. 807.) Here, defendant's testimony suggested that he had a good work record and was regularly employed 40 to 45 hours a week. That suggestion was contradicted by the State's rebuttal witness who gave as a specific example defendant's work record for the week before the crime, during which period defendant had been absent for two days. We consider his statement to have been a sufficiently proper rebuttal to defendant's statement concerning his work record.

■■ Finally, defendant argues that the sentence of 5 to 15 years was excessive. In aggravation, it was disclosed that at the time of the crime in question, defendant was on probation following his conviction for the unlawful use of a weapon. The offense for which he was being sentenced was armed robbery involving the use of the same type weapon as in his prior conviction. The State recommended a sentence of 5 to 10 years. In mitigation, it was offered that defendant was 21 years old, had a wife and several children. He had completed three years of high school and was trying to finish by attending night school. During the course of the trial, he had been free on bond and had made every court appearance. He had been employed at the time of the occurrence, but had lost his job as a result of his arrest. Under all these circumstances, it was for the trial judge and not this court to determine the proper sentence to be imposed, since he was in a far better position to determine defendant's rehabilitation potential. (*People v. Taylor*, 8 Ill.App.3d 727, 290 N.E.2d 342.) We also note that the relationship between the minimum and the

maximum of the sentence properly conform to the principle incorporated in parts of the Illinois Unified Code of Corrections, Ill. Rev. Stat. 1972, ch. 38, par. 1005—8—1, though not specifically applicable to the Class 1 felony involved in this case.

Affirmed.

DRUCKER, P. J., and LORENZ, J., concur.