THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MICHAEL P. MITCHELL, a/k/a MICHAEL P. WILLIAMS, Defendant-Appellant.

(No. 59395; ■■■■■■)

First District (2nd Division)—March 18, 1975.

James J. Doherty, Public Defender, of Chicago (George L. Lincoln, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., and Thomas D. Rafter, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE HAYES delivered the opinion of the court:

Defendant was found guilty after a jury trial of the crime of murder (Ill. Rev. Stat. 1971, ch. 38, par. 9–1). He was sentenced to a term of 20 to 40 years.

At trial, Claude Harris testified that, on 15 December 1971, both he and Walter Williams lived on the third floor of the Lafayette Hotel, 29 West Garfield Boulevard, Chicago, Illinois. Between 5 and 6 P.M. Williams came to his (Harris') room where he (Harris) and the defendant then were. The three men consumed a quart of beer and some wine. At approximately 12:30 A.M. on 16 December 1971, the three men went down to the corner tavern, where they purchased a fifth of wine. The three men returned to the hotel and stayed in the lobby, drinking the wine which they had purchased. After 30 to 70 minutes, defendant and Williams got into an argument, and one Dobson, the night-clerk of the hotel, asked the men to go up to their rooms. The three men walked to the third floor, where Harris went into his room, while defendant and Williams went into Williams' room. Harris testified that he was fixing his television set when he heard defendant and Williams arguing. After waiting for a minute or two, he walked to Williams' room. As Harris

entered Williams' room, he observed the defendant stab Williams in the chest as Williams was lying on the bed. Harris testified that he pushed defendant back and asked why he had stabbed Williams. Defendant did not respond. Harris then picked up Williams to carry him downstairs. Harris leaned Williams up against the wall of the hallway at the fire exit door in order to open the door to the fire exit stairway which was across the hall from the door to Harris' room. Harris carried Williams to the stairway, where he hollered for Dobson to call the police. Defendant ran out the back door of the hotel.

On cross-examination, Harris testified that, when the first police officers arrived on the scene, he told them he had not seen anything. Later that same evening at the police station, Harris told the investigating officers that he, Williams, and defendant had been drinking in the lobby. The three men walked upstairs together, where Harris went to his room, and Williams and defendant went to Williams' room. Harris told the officers he heard the fire door squeak, and, when he looked out of his room, he observed Williams staggering down the hall. At that time Harris told the officers that he did not see the incident.

Harris testified that some time later he again talked to police investigators and told them substantially the same facts he had testified to at trial. Harris stated that he had originally denied seeing the killing because he lived in the area and was afraid.

Leslie Dobson testified that he is the night clerk at the Lafayette Hotel, where both Walter Williams and Claude Harris resided on the third floor. In the early morning hours of 16 December 1971, Harris, Williams, and the defendant left the hotel together. A short time later the three men returned to the hotel and remained in the lobby, where they were drinking wine. After 15 or 20 minutes, an argument developed, and, at Dobson's request, the men went upstairs. Dobson testified that 20 to 30 minutes later Harris yelled down and told him to call the police. After calling the police, Dobson ran upstairs and observed Walter Williams lying at the top of the staircase. Dobson testified that he did not see the defendant leave the hotel.

Dr. Dancul Culala testified that he is a pathologist for the Coroner of Cook County. On 16 December 1971, he performed an autopsy on the body of Walter Williams. Williams died of a stab wound of the chest. The wound was 6 inches deep and in a downward direction.

Steven Starcevich and Raymond Cooley, Chicago police officers, testified that, on 16 December 1971 at approximately 1:35 A.M., they responded to a call and proceeded to the Lafayette Hotel. On the third floor at that location they had found Walter Williams lying at the top of the stairs.

Francis Healy, a Chicago police investigator, testified that he had been assigned to the investigation of the death of Walter Williams. Upon his arrival at the scene at about 2:30 A.M. on 16 December 1971, Healy spoke with the first officers at the scene and with Harris and Dobson. On the third floor of the hotel, he observed a large pool of blood on the stair landing where the body was lying, and a second pool of blood in the hallway in front of the door to Claude Harris' room.

Healy testified that on the night of the killing, Claude Harris had stated that he, Williams, and the defendant were drinking together in the hotel lobby, when defendant and Williams got into an argument. All three men proceeded upstairs, Harris going to his room, and defendant and Williams going into Williams' room. Harris heard the fire escape door squeak and went into the hall, where he observed Williams stumbling. On 21 December 1971, 5 days after the killing, Investigator Healy again talked to Claude Harris at the police station. At that time Harris first stated that he saw the defendant kill Williams.

Healy testified that, on 22 December 1971, after he had seen defendant at Madison Street and Damen Avenue and after defendant had acknowledged that his name was Michael Mitchell, Healy told defendant that he (Healy) had a warrant for his arrest for murder whereupon he arrested defendant on the street and immediately informed him of his constitutional rights. Defendant was then using a cane or crutch. Healy then transported defendant to a police station and placed defendant in an interviewing room in order to process the arrest. While Healy was getting initial data (name, address, date of birth, height, weight) and before Healy had said anything to defendant about any details of the murder charge, defendant asked Healy what type of a knife was he (defendant) supposed to have cut deceased with. Healy looked at defendant, who then added "or bottle or whatever I cut him with." Healy then said there had been no further conversation at that time.

For the defense it was stipulated that a sweater and a pair of trousers had been taken from Claude Harris. A laboratory analysis of both items found that they contained human blood.

It was also stipulated that, from November 16, 1971, to November 29, 1971, defendant was in Cook County Hospital being treated for a stab wound in his left leg.

One Raymond Ellis, the employer of defendant, testified that, prior to the incident in question, he had observed defendant walking on a crutch. It appeared that defendant could not put pressure on his left leg.

While defendant on appeal argues several points, for a determination of this cause we deem it necessary to consider only defendant's argument that the jury was improperly instructed. Defendant complains that the

trial judge refused to give a defense-tendered instruction on prior inconsistent statements (IPI Criminal 3.11), which stated:

> "Evidence that on some former occasion a witness made a statement inconsistent with his testimony in this case, may be considered by you in deciding the weight to be given to the testimony of the witness."

■■ The function of instructions to a jury is to convey to the mind of the jury the correct principles of law applicable to the evidence submitted to it, so that the jury may, by application of the proper legal principles to the facts, arrive at a correct conclusion according to the law and the evidence. (*People v. Gambony* (1948), 402 Ill. 74, 83 N.E. 2d 321.) A defendant has a right to a full statement of the law from the court, and failure to give such a tendered full statement, when the jury consequently falls into error, is sufficient reason to justify a reversal. *People v. Bolden* (1968), 103 Ill.App.2d 377, 243 N.E.2d 687; *People v. Kucala* (1972), 7 Ill.App.3d 1029, 288 N.E.2d 622.

In the case at bar, the crux of the State's case was the testimony of Claude Harris. He was the only witness who linked the defendant directly to the killing of Williams. The credibility of Harris was therefore a material issue. The most important part of Harris' testimony was that he had seen the defendant stab Williams. However, on cross-examination, Harris himself admitted having made two prior statements that he had not seen the stabbing. When the first police officers arrived at the scene, Harris had told them he had not seen anything. Thereafter, at the police station, Harris had told the investigating officers that he, Williams, and defendant had been drinking in the hotel lobby, and that they had then proceeded upstairs. Harris had gone into his room, while Williams and defendant had gone into Williams' room. A short time later Harris had heard the fire escape door squeak, had gone out of his room, and had observed Williams stumbling down the hallway, but had not seen the incident itself. It was not until 5 days after the incident that Harris had first told the police that he had seen the killing.

■■ It is true, as the State argues, that the jury was given a general instruction on credibility of witnesses (IPI Criminal 1.02). However, this instruction did not mention prior inconsistent statements. Illinois Pattern Jury Instruction 3.11, tendered by defendant but refused, was expressly designed to inform the jury that they could consider prior inconsistent statements in determining the weight to be given to the testimony of a witness. Since Claude Harris' credibility was directly in issue and since he had admitted giving two prior inconsistent statements on a material issue in the case, the defendant was entitled to have the jury instructed on the law regarding prior inconsistent statements.

122

■■ Errors which occur at trial can be so unimportant and insignificant that they may be deemed harmless. In such cases, the errors will not affect a judgment of conviction if we are able to declare that the errors were harmless beyond a reasonable doubt or did not contribute to the conviction. (*Chapman v. California* (1967), 386 U.S. 18, 17 L.Ed.2d 705, 87 S.Ct. 824.) In the case at bar, Harris' testimony was the crux of the State's case and the prior inconsistent statements by Harris affected a material issue of the case. Upon these facts we are unable to hold that the error in failing to instruct the jury on the law regarding prior inconsistent statements was harmless beyond a reasonable doubt or did not contribute to the conviction. Accordingly, defendant's conviction cannot stand.

Since the conviction must be reversed, the question now arises as to whether the cause should be remanded for a new trial. One of the contentions made by defendant on this appeal is that the State's evidence was insufficient to prove him guilty beyond a reasonable doubt. The propriety of a remand requires us to review this contention. The State's position is that the testimony of eye-witness Harris, corroborated in substantial part by the testimony of Officer Healy and night-clerk Dobson, if believed, is sufficient to prove defendant guilty beyond a reasonable doubt. The position of defendant is that the testimony of Harris was so impeached by his prior inconsistent statements and by its physical improbability as necessarily to leave a reasonable doubt as to defendant's guilt. The State's response is that the conflict in the evidence simply presented a credibility issue for the jury, who believed Harris.

■■ For the limited purpose of determining the propriety of a remand for a new trial, but without prejudice to the renewal of the contention on a subsequent appeal, if any, after the new trial, we hold simply that the evidence adduced by the State at trial is such as to warrant our remand for a new trial. Since any detailed analysis of this conclusion might prejudice one party or the other, we decline to treat the issue in any further detail.

Our determination that the cause must be reversed and remanded for a new trial makes a consideration of the remaining issues raised by defendant unnecessary, because it is unlikely that the developments upon which those other issues were based will recur upon a new trial.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed and the case remanded for a new trial.

Reversed and remanded.

DOWNING, P. J., and LEIGHTON, J., concur.