THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* AHMED BEN ALARSHI, Defendant-Appellant.

First District (1st Division)   No. 76-1471

Opinion filed February 6, 1978.

Lawrence J. Suffredin, Jr., of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Joan Cherry, and Richard D. Heytow, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

After a jury trial, Ahmed Ben Alarshi (defendant) was found guilty on two counts of aggravated battery (Ill. Rev. Stat. 1973, ch. 38, par. 12—4), and sentenced to 1 to 3 years. On appeal he contends only that the court erred in refusing to instruct the jury regarding prior inconsistent statements and that this error . was compounded when the court prohibited the defense counsel from commenting upon these inconsistencies in closing argument.

The victim, Freddi Demellow, was shot in a tavern, in Chicago, shortly after midnight on June 13, 1974. Jean Watson testified she and Kathy Green were working as dancers in the tavern. The defendant, owner of the tavern, was tending bar. He engaged in heated conversation with a blond woman at the portion of the bar farthest from the front door. At about 11 p.m., the victim entered the tavern and sat at the bar near the door. Shortly after midnight, the victim walked to the back of the tavern and made a telephone call. As he walked down the length of the bar to return to his seat, the witness saw the defendant warn two customers who had just entered the tavern to "leave quick." At the same time, the blond woman walked past the victim toward the front door. The witness heard a shot, saw the victim fall near the bar, and saw the defendant holding a gun "straight out." The defendant then quickly walked to the rear of the tavern with the gun and returned empty-handed. The witness also testified she heard another shot some 10 minutes before, which was followed by a remark made by the defendant to the blond woman concerning the Fourth of July. The witness ran to her dressing room following the second shot. .

On cross-examination it was revealed that, in addition to her testimony at the preliminary hearing, the witness, Jean Watson, gave the police a statement subsequent to the incident. This statement, to be more fully discussed below, was a joint written statement given by Jean Watson and Kathy Green. The preliminary testimony and the joint statement both attributed the shooting of the victim to the defendant.

Miss Watson's account of events was substantially duplicated by the victim, Freddi Demellow, who also testified for the State. He added that when the defendant served him a drink after he arrived at the tavern, the defendant motioned toward the blond woman at the far end of the bar and said he had to "settle an account" with her. The victim saw the defendant return from the back of the tavern with a gun and fire it into the

air as he asked of the blond woman, "Haven't you heard of the 4th [*sic*] of July?" The victim stated the defendant then placed the gun underneath the bar. The victim also testified that the defendant "had the gun in his hands and fired the bullet" which wounded him. As he lay on the floor the defendant leaned over and requested him not to tell the police who shot him. The victim also testified that, three days later, the defendant visited him in the hospital, asked to be forgiven and offered to take care of the victim's children.

A police officer testifying for the State spoke with the victim for a few moments after the shooting. The victim indicated at that time he knew the identity of the assailant although he did not provide the officer with any name.

The defendant testified in his own behalf. He denied shooting Freddi Demellow or ever possessing a gun and stated he did not know who shot the victim. On cross-examination the defendant acknowledged visiting the victim in the hospital three days after the incident but denied asking forgiveness for his actions. He stated he merely expressed his sympathy and offered to watch the victim's children because he felt sorry for him.

Defendant contends only that the court erred by not providing the jury with an instruction regarding prior inconsistent statements. (Illinois Pattern Jury Instructions, Criminal, No. 3.11 (1968) (hereinafter cited as IPI Criminal No. 3.11).) It is defendant's position that this instruction was necessary in view of the inconsistencies between the trial testimony and both the preliminary hearing testimony of Jean Watson and the joint statement she and Kathy Green gave the police.

■■■ At the preliminary hearing Jean Watson testified she was unable to recall the number of shots fired. She also did not mention the earlier shot or defendant's remark concerning the Fourth of July. Defendant contends that this prior testimony directly contradicted Jean Watson's testimony at trial, wherein she specifically remembered two shots and defendant's remark which followed the earlier shot. We are unable to agree with defendant's position that these inconsistencies constitute material discrepancies impeaching the witness. Although out-of-court written or oral statements may be introduced to discredit a witness (*Hapke v. Brandon* (1951), 343 Ill. App. 524, 528, 99 N.E.2d 636), these statements "must have the 'reasonable tendency' to discredit the testimony of the witness on a material matter." (*People v. Brown* (1972), 6 Ill. App. 3d 500, 504, 285 N.E.2d 515, quoting from *People v. Rainford* (1965), 58 Ill. App. 2d 312, 321, 208 N.E.2d 314; see also *Reilly Tar & Chemical Corp. v. Lewis* (1942), 326 Ill. App. 84, 87, 61 N.E.2d 290.) Jean Watson's testimony at the preliminary hearing that she was unable to recall the number of shots fired, as well as her omission of defendant's earlier remark and the first shot, are not contradictions of material matters

bearing upon the trial issue as to whether defendant fired the shot which struck Freddi Demellow.

The cases cited by defendant are unpersuasive in that they involve prior impeaching statements which directly contradicted the trial testimony of the witness on material elements of the offense charged (*People v. Ladas* (1957), 12 Ill. 2d 290, 294, 146 N.E.2d 57; *People v. Mitchell* (1975), 27 Ill. App. 3d 117, 121, 327 N.E.2d 158, *appeal denied*, 60 Ill. 2d 599); or revealed omissions in the trial testimony material to the credibility of the witness (*People v. Henry* (1970), 47 Ill. 2d 312, 319-20, 265 N.E.2d 876). Furthermore, the trial testimony of Jean Watson was corroborated by the victim, who provided clear and convincing testimony that defendant held the gun and fired the important shot which wounded the victim.

Defendant also claims Jean Watson was impeached during cross-examination by portions of the joint statement she and Kathy Green gave the police. This joint statement was typed on one sheet of paper. It consisted of questions preceded by "Q." and separate responses by the witnesses preceded by identifying letters "W." and "G." respectively. Each witness signed the statement which included two typed answers "Yes" after each initial responding to the question "Do each of you agree that the account given by the other is accurate?"

During cross-examination of Jean Watson, defense counsel attempted to impeach her by pointing out that according to the typed statement the defendant fired additional shots outside the tavern following the shooting, four people ran out of the tavern, and the defendant telephoned the police. This was actually unfair and improper as these questions all incorrectly attributed to Jean Watson the response actually made by Kathy Green. On redirect examination the State brought out, over objection by defendant, that these parts of the statement were in fact made by Kathy Green, as was indicated on the typed sheet by the letter "G." appearing before this material. Neither defendant nor the State offered this joint statement in evidence. During jury deliberation, the jury sent out a written note which requested a copy of the statement. The trial court consulted with counsel. The court gave the jury a written response that they were "in possession of all the material which is evidence in this case" and that the statement had not been admitted into evidence.

Defendant contends that the statements provided by Kathy Green are completely attributable to Jean Watson in view of the reference by each witness to the other's "account."

■■■ In our opinion, it was unfair to attempt to attribute the Kathy Green statements to Jean Watson even though Watson had, in a general way, expressed the opinion that the responses given by Green were "accurate." Furthermore, of dispositive importance is the fact that

whether defendant fired additional shots outside, whether four people ran out of the tavern and whether defendant telephoned the police have no materiality here. Therefore, as above shown these statements by Green were not proper as attempted impeachment of Watson's trial testimony. In addition, the allegedly impeaching comments contained in the joint statement and read to the jury do not, in our opinion, contradict or tend to vary the trial testimony of Jean Watson regarding the actual shooting (*People v. Miller* (1975), 31 Ill. App. 3d 436, 446, 334 N.E.2d 421). In our opinion, it was not necessary for the trial court to give the jury IPI Criminal No. 3.11. In this situation it was sufficient for the court to give the jury the instruction concerning the credibility of the witnesses (IPI Criminal No. 102).

In closing argument, the court restricted defense counsel to description of the joint statement and stating the fact that it showed that Jean Watson read the statements of Kathy Green and signed the statement regarding the accuracy of the responses by Kathy Green. We find no error in this regard as it permitted a full and accurate exposition of the joint statement.

■■ We will also point out the strong and overwhelming evidence of guilt. The testimony of Jean Watson and Freddi Demellow was clear and convincing to establish guilt beyond reasonable doubt. As opposed to this evidence the defendant offered only a categorical denial of guilt. Defendant received a fair trial free from error. The judgment appealed from is affirmed.

Judgment affirmed.

McGLOON and O'CONNOR, JJ., concur.