THE PEOPLE OF THE STATE OF ILLINOIS, Respondent-Appellee, *v.* LAWRENCE EDGEWORTH, Petitioner-Appellant.

(No. 57870; ▮▮▮▮▮▮▮▮▮)

First District (2nd Division)—June 24, 1975.

Frederick F. Cohn, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Kenneth L. Gillis, Mariann Twist, and Nicholas P. Iavarone, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE HAYES delivered the opinion of the court:

This is an appeal from the dismissal of the post-conviction petition of Edgeworth (hereafter at times petitioner) without an evidentiary hearing. On 24 April 1968, petitioner was convicted in a jury trial of four counts of attempt murder and one count of aggravated battery. After sentencing, petitioner filed a timely notice of appeal and petitioner was admitted to bail pending the appeal. Successive appellate counsel (at least one of whom had been petitioner's trial counsel) moved for and were allowed nine extensions of time in which to file petitioner's brief. The last extended date (marked final) on which the brief was due was 15 July 1970. The brief was not filed as of that date, nor was any motion filed for a further extension of time. On 8 September 1970, this court, on its own motion, dismissed the appeal for want of prosecution.

On 14 September 1970, petitioner's appellate counsel moved to vacate the dismissal of the appeal and for permission to file the brief instanter. On 21 September 1970, the motion to vacate was denied, as was a subsequent motion to reconsider the denial of the motion to vacate. In the motion to reconsider, petitioner's appellate counsel apologized to the court for the negligence which had resulted in the dismissal of the appeal. On 22 October 1970, the mandate of this court issued.

Petitioner's appellate counsel filed in the supreme court a petition for leave to appeal to that court from the dismissal of the direct appeal and from the denial of the motion to vacate the dismissal. In response, the State filed its answer asking that the petition be denied. Appellate counsel then filed in this court a motion to recall the mandate; the State filed a response thereto, to which it attached a copy of its anwer to the petition for leave to appeal. On 2 December 1970, the petition for leave to appeal to the supreme court was denied. On 14 January 1971, petitioner's motion to reconsider the denial of leave to appeal was denied. On 12 October 1971, the United States Supreme Court denied certiorari (*Edgeworth v. Illinois*, 404 U.S. 835, 30 L.Ed.2d 66, 92 S.Ct. 116).

In the record on the instant appeal appear copies of the several motions in this court and of the responses thereto and a copy of the State's answer in the supreme court to the petition for leave to appeal. From these materials we know what issue was actually raised in those pro-

ceedings. The issue was: Is Edgeworth bound by the negligent omissions of his appellate counsel so that the dismissal of his appeal was a proper exercise of discretion on the part of this court even though Edgeworth thereby lost his right to appeal? Edgeworth relied on the case of *People v. Brown* (1968), 39 Ill.2d 307, 235 N.E.2d 562, in which our supreme court held that the dismissal of Brown's appeal was an abuse of discretion. The State sought to distinguish *Brown* in that *Brown* involved a set of special circumstances for which there was no counterpart in Edgeworth's case, namely, Brown's appellate counsel in repeated instances had accepted the representation of a defendant on appeal and then, after having filed a timely notice of appeal, had done nothing further to prosecute the appeal (for which pattern of conduct he had subsequently been disbarred). The State then relied on *People v. Baze* (1969), 43 Ill.2d 298, 253 N.E.2d 392, in which, on an appeal from the dismissal of a post-conviction petition, the court held, in reviewing the alleged impropriety of the dismissal of petitioner's direct appeal for want of prosecution, that petitioner was bound by the negligent omissions of his counsel on direct appeal in the absence of special circumstances such as were present in the *Brown* case.[1]

■■ In passing, we also infer from *Aliwoli* that the better procedure by which to raise the issue of abuse of discretion in dismissing the appeal for want of prosecution would appear to be by motion in the appellate court to vacate the dismissal and to reinstate the appeal, rather than by post-conviction petition.

As will appear below, in the instant post-conviction proceeding, the

---

[1] The recent decision in *People v. Aliwoli* (1975), 60 Ill.2d 579, 328 N.E.2d 555, indicates that the "special circumstances" referred to as present in *Brown* may have been misapprehended by the State. In *Aliwoli,* there was no pattern of misconduct by retained appellate counsel; yet the supreme court held that Aliwoli was controlled by *Brown* and involved a similar abuse of discretion by the appellate court when the appellate court denied defendant's motion to reinstate the dismissed appeal. The supreme court directed attention to the following language in *Brown:*

> "'For a representative system of litigation to function, it is self-evident that under most circumstances clients must be bound by the acts of their lawyers. However, it is equally self-evident that a mechanical application of this legal proposition can lead to harsh results repugnant to commonly held notions of justice and fair play. * * * Further mitigation against adhering to an inflexible application of this rule stems from the realization that the dismissal of an action for want of prosecution is within the discretion of the hearing court, with the right to reinstate likewise being a matter of judicial discretion. (*Combs v. Steele,* 80 Ill. 101.) Factors relevant to the exercise of this discretion are the subject matter under litigation, the reason for the dismissal, and the consequences thereof. In the instant case [*i.e.,* Brown] the subject matter is the propriety of defendant's criminal trial, the grounds for dismissal, the defendant's attorney's inaction and the consequences thereof— the denial of defendant's right to appeal.'" 60 Ill.2d 579, 581-82.

Hence, the circumstances in *Brown* to which the court in *Aliwoli* directed attention are those set out in the last quoted sentence above.

State contends that the denial of the petition for leave to appeal to the supreme court from the dismissal of the direct appeal by this court (and, presumably, the denial by the United States Supreme Court of the subsequent petition for writ of certiorari) constituted, in effect, a holding (1) that Edgeworth was bound by the negligent omissions of his counsel on his direct appeal, so that there was no abuse of discretion on the part of this court in dismissing that appeal and in refusing to vacate the dismissal, and (2) that no special circumstances comparable to those in *Brown* existed in Edgeworth's case. On that premise, the State contends that the issue of abuse of discretion thereby became res judicata.

Again as will appear below, the relevance of those contentions of the State to the instant post-conviction proceedings is as follows: the crucial allegation in the post-conviction petition is that the petitioner was denied his right to effective assistance of appellate counsel in that his appeal was dismissed solely because of the failure of counsel either to file the brief or to obtain necessary extensions of time therefore. The State contends that this issue also was either res judicata by reason of the proceedings which followed the dismissal of the direct appeal and the refusal to vacate that dismissal, or was waived by failure to raise it in those proceedings, in which it might have been raised. The post-conviction court then held, *inter alia,* that the post-conviction issue of the incompetence of appellate counsel was res judicata.

■■ We have not been cited to any authority,[2] nor have we found any authority, for the contention that the denial of the petition for leave to appeal has any res judicata effect, even as to the issue of abuse of discretion actually raised in the petition and answer. On the contrary, the Committee comments to Supreme Court Rule 315 state:

> "The practice [petition for leave to appeal] is similar to the *certiorari* procedure in the United States Supreme Court, and the considerations are in the main the same  *  *  *.
>
> \* \* \*
>
> In prescribing the contents of the petition, [paragraph (b)] it makes clear that the purpose is to state why the Supreme Court should take the case, and not merely to argue the case on the merits, though a statement as to why the decision below should be reversed is usually pertinent to the former question as well as the latter, as with the petition for *certiorari* in the United States Supreme Court."

Hence, the petition for leave to appeal to our supreme court is analogous to the petition for writ of certiorari in the United States Supreme Court.

---

[2] Three cases cited in the State's brief have nothing to do with the matter in question.

But the United States Supreme Court has consistently taken the position that its denial of a petition for writ of certiorari decides nothing as to the merits of the issues raised in the petition, and merely denotes that fewer than four justices deemed it advisable to review the lower court's holding. (*Maryland v. Baltimore Radio Show, Inc.* (1949), 338 U.S. 912, 94 L.Ed. 562, 70 S.Ct. 252; *Brown v. Allen* (1953), 344 U.S. 443, 97 L.Ed. 469, 73 S.Ct. 397.) In *Brown,* the relevant issue was the legal effect of the United States Supreme Court's denial of certiorari upon Federal constitutional issues which had been adjudicated by a State court of last resort in the case as to which certiorari had been denied, when the same Federal constitutional issues were raised in subsequent habeas corpus proceedings in a Federal District Court. Mr. Justice Frankfurter, speaking for the majority of the Court on this issue, said:

> "If we were to sanction a rule directing the District Courts to give any effect to a denial of certiorari, let alone the effect of res judicata * * * we would be ignoring actualities recognized ever since certiorari jurisdiction was conferred upon this Court more than sixty years ago." (344 U.S. 443, 491.)

Mr. Justice Frankfurter further said:

> "Just as there is no ground for holding that our denial [of certiorari] is in effect res judicata, so equally is there no basis for leaving the District Judge free to decide whether we passed on the merits." 344 U.S. 443, 494.

We note also that, under Supreme Court Rule 315(e), the opposing party may, but need not under penalty of default, file an answer to the petition for leave to appeal. Hence, the petition itself is not necessarily an adversary proceeding to which the application of the doctrine of res judicata (and much less the doctrine of waiver) is appropriate.[3]

■■ We cannot, therefore, accept the contention of the State that the denial of Edgeworth's petition for leave to appeal to our supreme court, to which the State filed an answer asking that the petition be denied, rendered res judicata even the issue of abuse of discretion which was actually raised by the petition and answer, much less the issue of incompetence of Edgeworth's counsel on direct appeal which was not actually raised. It is even more obvious that the doctrine of waiver can have no application to the proceeding by petition and answer. We conclude that the post-conviction court erred in holding res judicata the

---

[3] The only relevant Illinois decision which we have been able to find (*Corbett v. Devon Bank* (1973), 12 Ill.App.3d 559, 299 N.E.2d 521) merely says that, at most, a denial of a petition for leave to appeal indicates approval of the *result* reached **below.**

issue of incompetence of petitioner's counsel on direct appeal, nor was that issue waived by failure to raise it in the petition and answer.

To resume the statement of the facts in the instant case: On 3 December 1971, the instant post-conviction petition was filed. The petition made the following allegations (adequately supported by further specific allegations):

(1) petitioner was denied his constitutional right to have the jury properly instructed as to his defense of insanity;

(2) petitioner was convicted despite the fact that the evidence demonstrated that he was insane at the time of the incident;

(3) the jury was improperly instructed as to the offense of attempt murder;

(4) petitioner was denied his constitutional right to confront witnesses against him;

(5) petitioner was denied his constitutional right to a fair trial because the jury improperly learned that petitioner had had prior contact with the law;

(6) the sentence imposed violated the 8th amendment;

(7) petitioner was denied his constitutional right to due process in that his appeal was dismissed solely because of the negligent omissions of his appellate counsel and without any personal fault on his part; not only had he not been notified of counsel's failure to prosecute the appeal or of the dismissal of the appeal, but, throughout the relevant period of time, petitioner occasionally suffered from severe mental disorders which prevented his reasoning in a rational manner and which caused him to be confined in a mental hospital;

(8) petitioner was denied effective assistance of appellate counsel in that his appeal was dismissed solely because of the failure of appellate counsel either to file the brief or to obtain necessary extensions of time therefor.

An amended petition was then filed which simply added one further allegation, namely, that petitioner's trial counsel had rendered ineffective assistance in that counsel had failed to see to it that the jury was properly instructed as to the charge of attempt murder and as to the defense of insanity. Petitioner was represented in the post-conviction proceeding and in the instant appeal by an attorney whom petitioner's counsel on the direct appeal had associated with himself in the summer of 1970 for the preparation of the brief on the direct appeal.

The State moved to dismiss the amended petition without an evidentiary hearing on the ground that none of the allegations raised an issue of

constitutional dimension. At the hearing on the State's motion to dismiss, the State additionally contended that, even if the allegation as to ineffective assistance of appellate counsel raised an issue of constitutional dimension, that issue in the instant case was either res judicata or had been waived. In response, petitioner contended that the said allegation was not res judicata since it had not been raised in the proceedings relative to the direct appeal. As to the waiver contention, petitioner relied on the case of *People v. Frank* (1971), 48 Ill.2d 500, 272 N.E.2d 25, as authority for the proposition that the doctrine of waiver was inapplicable under the instant circumstances.

The amended petition was dismissed without an evidentiary hearing on the grounds that the issue of ineffective assistance of appellate counsel was res judicata and that none of the other allegations (especially the allegations relating to the allegedly erroneous jury instructions) raised an issue of constitutional dimension. This appeal was then taken.

For the reasons heretofore stated, we hold that the issue of inffective assistance of appellate counsel was not res judicata in the instant post-conviction proceeding. For the same reasons, we also hold that the said issue was not waived by failure to raise it in the petition for leave to appeal to the supreme court. The case of *People v. Frank* is not directly in point on either of these two matters and we do not rely upon it for either of these holdings.

But the *Frank* case *is* directly in point on all the other issues in this post-conviction proceeding. *Frank* holds that the allegation of ineffective assistance of appellate counsel (supported by adequate more specific allegations) raises an issue of constitutional dimension which is cognizable in a post-conviction proceeding; it elucidates the impact of that allegation on other allegations of the post-conviction petition which are not normally cognizable in a post-conviction proceeding because they do not in themselves raise issues of constitutional dimension; and it illustrates how a reviewing court should dispose of such other allegations. Because *Frank* controls the disposition of this appeal, we pause to examine it in detail.

In *Frank*, the post-conviction petitioner had previously taken a direct appeal by way of writ of error in which his appointed appellate counsel had raised certain issues as to alleged trial errors. The appellate court affirmed Frank's conviction, and no petition for leave to appeal to the supreme court was filed. Thereafter, Frank filed a post-conviction petition in which he raised certain other issues which had not been raised (though they might have been) on direct appeal (including the issue of whether he had been proved guilty beyond a reasonable doubt), and then alleged that his appellate counsel had rendered ineffective assistance in that counsel had failed to raise the issue of reasonable doubt on the direct

appeal. The State moved to dismiss the petition without an evidentiary hearing on the following grounds: (1) the issue of ineffective assistance of appellate counsel was not within the scope of a post-conviction proceeding because it was not a matter which occurred "in the proceedings which resulted in [petitioner's] conviction"; (2) all the other allegations (including the allegation that petitioner had not been proved guilty beyond a reasonable doubt) raised issues which were not of constitutional dimension; (3) in any event, all the other allegations raised issues which might have been raised on the direct appeal and which, therefore, had been waived by the failure so to raise them. The post-conviction court denied relief and Frank appealed to the supreme court which accepted the appeal. In its opinion the court said:

"At the outset, we shall consider the application of *res judicata* and waiver, and the closely related issue of the competency of counsel on the direct appeal. We have earlier suggested that the doctrine of waiver ought not to bar issues from consideration under the Post-Conviction Hearing Act where the alleged waiver stems from incompetency of appointed counsel on appeal * * * or denial of counsel on appeal * * *. This notion comports with related holdings that waiver will not apply where it would act as a denial of due process * * *, or of fundamental fairness * * * where appointed counsel on appeal thwarted the defendant's vigorous and manifest efforts * * * to raise additional issues. In view of the need to protect the right to appeal with the aid of competent counsel, and upon appraisal of the spirit and ultimate purpose of the Post-Conviction Hearing Act, we conclude that the Act provides a proper vehicle for review of those issues as to which review by direct appeal has been unconstitutionally denied by deprivation of the right to appeal, the right to competent counsel on appeal, or the concept of fundamental fairness." (All indicated omissions are case citations.) 48 Ill.2d 500, 503-04.

The supreme court then dealt with the allegation that Frank had not been proved guilty beyond a reasonable doubt. The court held that, given the purpose of the Post-Conviction Hearing Act, the issue in its own right could not be raised under the Act but that a different situation was presented in view of the related allegation that Frank's appellate counsel was incompetent in failing to have raised the issue on direct appeal.

"Thus, to refuse review of the question [*i.e.*, the reasonable doubt issue] now, on the grounds that it is not within the purview of the Act, or was waived by failure to raise it on appeal, as the State maintains, is said to prejudice Frank for the incompetence of appointed counsel on appeal. We have concluded above that

where necessary the Act may serve to vitiate the prejudice of waiver attendant upon incompetence of counsel on appeal, by serving as a vehicle for review of all directly appealable issues. Thus, whether Frank is entitled to review under the Act of the failure-of-proof issue, depends upon the determination of his allegation that failure to raise the issue on appeal constituted incompetence of his appointed counsel." 48 Ill.2d 500, 504-05.

The test of incompetence was whether the failure-of-proof issue "was so patently meritorious that the failure of appellate counsel to raise the issue on direct appeal constitutes incompetence." The supreme court then itself weighed the merits of the failure-of-proof issue, "which was fully briefed by counsel appointed in these proceedings," and found that the issue was not so patently meritorious that failure to raise it on direct appeal constituted incompetence. The court, therefore, affirmed the dismissal of the post-conviction petition as to that issue.

■■ In the instant case, therefore, on the authority of *Frank*, we hold that the issue of incompetence of appellate counsel (in negligently failing to prosecute the appeal with the result that petitioner's very right to appeal was properly lost) raised an issue of constitutional dimension which is cognizable in a post-conviction proceeding. For other reasons, we have already held that the said issue was neither res judicata nor waived.

Furthermore, in the instant case, since the alleged incompetence of appellate counsel deprived petitioner of his right to appeal itself, the other issues which petitioner seeks to raise in his post-conviction petition were not raised on the direct appeal as they might have been and were to have been. Again on the authority of *Frank*, we hold that these other issues were not thereby waived, and, though not normally cognizable in their own right in a post-conviction proceeding because they are not issues of constitutional dimension, must nevertheless be reviewed in the instant post-conviction proceeding for the purpose of determining whether those issues were so patently meritorious that the failure of appellate counsel to raise them on direct appeal constituted incompetence of appellate counsel. As did the supreme court in *Frank*, we proceed to examine each of the other allegations for patent merit, and we also have both the trial transcript and the benefit of the brief filed by petitioner in this appeal which develops each of those other issues.

■■ The instructions given relative to the charge of attempt murder were as follows:

"The jurors are instructed that a person commits an attempt where with the intent to commit a specific offense he does any act which constitutes a step toward the commission of that offense. It does

not matter that because such person has misapprehended such circumstances which have permitted him to commit the offense attempt.

\* \* \*

[A] person who kills an individual without lawful justification commits murder if in performing the acts which caused the death, he either intends to kill or do bodily harm to the individual or another or he knows that such acts create strong possibility of death to another."

Despite the incoherence of the inapplicable second sentence, these instructions are adequate. (See *People v. Price* (1972), 7 Ill.App.3d 110, 286 N.E.2d 530; *People v. Gersbacher* (1970), 44 Ill.2d 321, 255 N.E.2d 429.) Hence, there is no patent merit to the allegation that the instructions as to the offense of attempt murder were improper.

■■ The instruction given relative to the defense of insanity was as follows:

"The State must prove beyond a reasonable doubt, as a result of the mental disease or mental defect the defendant did have substantial capacities either to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law.

A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacks substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law."

This instruction sufficiently complies with the requirement that a proper jury instruction on insanity must state the defendant's lack of criminal responsibility, if, as a result of mental disease or defect, he was unable to appreciate the criminality of his conduct. (*People v. Childs* (1972), 51 Ill.2d 247, 281 N.E.2d 631.) The first portion of the instruction requires a reading of "despite" for the phrase "as a result of," but the second portion of the instruction is accurate and indicates the nature of the erroneous wording in the first portion. We find, therefore, there is no patent merit to the allegation that the jury was improperly instructed as to the defense of insanity.

The trial record supports the jury's failure to find petitioner insane at the time of the incident, and there is no patent merit to petitioner's allegation that the evidence demonstrated his insanity.

■■ The allegation that petitioner was denied his constitutional right to a fair trial because the jury improperly learned that he had had prior contact with the law stems from the following facts. Robert Angus, an eye-witness to, and one of the victims of, the attempt murder incident for which petitioner was tried and convicted, testified for the State. On

direct examination, during the course of his testimony as to the incident, he was asked by the prosecutor: "When did you next see the person who was driving that car [namely, the petitioner]?" Angus answered that he had next seen petitioner in police "mug shots" which had been shown to him. Trial counsel for petitioner promptly objected to the reference to "mug shots" and moved for a mistrial or, in the alternative, that the question and answer be stricken and the jury be instructed to disregard them, on the ground that the reference to "mug shots" inferred that petitioner had had prior contact with the law. The court took petitioner's alternative motions under advisement and, after argument outside the presence and hearing of the jury, denied the motion for a mistrial but struck the question and answer and instructed the jury to disregard them. The court relied on *People v. Kirkwood* (1959), 17 Ill.2d 23, 160 N.E.2d 766. The cases cited by petitioner in his brief developing this issue (*People v. Williams* (1966), 72 Ill.App.2d 96, 218 N.E.2d 771; *United States v. Reed* (7th Cir. 1967), 376 F.2d 226) are distinguishable, and the recent case of *People v. Johnson* (1973), 11 Ill.App.3d 745, 297 N.E.2d 683, is in point. In that case, a police officer, testifying for the State on direct examination, was asked whether he had attempted to arrest the defendant at a prior time; he answered that he had and had previously obtained an arrest warrant and a criminal history sheet for the defendant. An objection and a motion for mistrial were made. The motion for a mistrial was denied but the objection was sustained and the jury was instructed to disregard the reference to a criminal history sheet. In reviewing this issue on appeal, the court stated:

"Defendant contends that he was denied a fair trial when the judge erred in refusing defendant's motion for a mistrial after the investigating officer referred to defendant's 'criminal history sheet.' At the time, however, defense objection to the statement was sustained and the judge immediately instructed the jury to disregard the officer's remark. An instruction to disregard evidence ordinarily cures error in its admission (*People v. Nelson*, 124 Ill.App.2d 280, 260 N.E.2d 251.) This is particularly true when the improper testimony is not directly responsive to the question and is promptly stricken, with an instruction to the jury to disregard it. (*People v. Kirkwood*, 17 Ill.2d 23, 160 N.E.2d 766; *People v. Ogden*, 77 Ill. App.2d 312, 222 N.E.2d 329.) In the present case, the witness' reference to defendant's 'criminal history sheet' was not solicited by the State's Attorney's question in a calculated attempt to prejudice the jury. Rather, it appears as an inadvertent remark which went beyond the question asked and was then quickly stricken by the court and the jury was instructed to disregard it. We find that

the prompt action by the judge relieved the remark of any substantial prejudicial effect. See *People v. O'Neal*, 118 Ill.App.2d 116, 254 N.E.2d 559." (11 Ill.App.3d 745, 749.)

We conclude that the unsolicited and sole reference by Angus to "mug shots," to which reference objection was sustained and the jury promptly instructed to disregard the question and answer, was not a matter so patently meritorious that failure to raise it on direct appeal constituted incompetence on the part of appellate counsel.

The allegation that petitioner was denied his constitutional right to confront witnesses testifying against him stems from the following facts. The same Robert Angus had testified for the State on direct examination and had been cross-examined. The cross-examination related to various details of the description of the incident which Angus had given on direct examination. The State then called Angus for redirect examination as to the details raised on cross-examination. On recross-examination, defense counsel for the first time sought to question Angus as to Angus' financial interest, if any, in the outcome of the case. The State objected on the ground that the question went beyond the scope of the redirect examination. The objection was sustained. No offer of proof was made, so that we do not know how Angus might have had a financial interest in the outcome of the case.

■■ The case of *People v. Steel* (1972), 52 Ill.2d 442, 288 N.E.2d 355, while dealing with cross-examination, appears equally applicable to recross-examination. The case held that inquiry as to the bias of a witness for the State may go beyond the scope of the direct examination; the credibility of a witness in respect of the testimony which he has given on direct examination will often involve matters entirely unrelated to that testimony. Hence, in the instant case it was error to preclude defendant from going beyond the scope of the redirect examination for the purpose of establishing a bias on the part of the witness which would affect his credibility. In *Steel*, however, the court then went on to hold that the error was harmless beyond a reasonable doubt. The second holding in *Steel* is equally applicable to the instant case. The test applied in *Steel* was whether the jury would have reached a different verdict, had the witness admitted the particular bias involved. In the instant case, it is clear that the jury would not have reached a different verdict. The four counts of attempt murder, of which defendant was convicted, involved four persons in a restaurant who had been struck by bullets fired by petitioner. One of the four was Angus. All four persons testified for the State; the testimony of each relating to the incident and to the events which led up to the incident was essentially the same, and each identified petitioner as the shooter. Petitioner's sole defense was insanity, and no

testimony of Angus related to that defense. Under these circumstances, it is clear that, even if Angus had a financial interest in the outcome of the prosecution such that he was a biased witness whose credibility was thereby impeached, Angus' credibility was unrelated to the credibility of the other three witness-victims and unrelated to the insanity defense upon which petitioner solely relied. We conclude that the error was harmless beyond a reasonable doubt, and therefore that this issue was not so patently meritorious that failure to raise it on direct appeal constituted incompetence on the part of appellate counsel.

The allegation that the sentences imposed on petitioner violated the eighth amendment to the United States Constitution was developed by the more specific allegations that the sentences were excessive and that, in imposing them, the court had not properly taken the rehabilitation factor into account. At the hearing in aggravation and mitigation, the State had stressed the seriousness of the offenses, the fact that petitioner had two prior convictions, and the necessity to protect the public from the petitioner. The State, therefore had recommended concurrent sentences of 19 years to 20 years on the four attempt murder counts, and a concurrent sentence of 4 years to 5 years on the aggravated battery count. In mitigation, petitioner's trial counsel had recommended concurrent sentences with a minimum sentence of 1 year on each count. Counsel had urged that, even though petitioner was not insane at the time of the incident (as the jury had found), nevertheless petitioner needed for his rehabilitation mental treatment of a type not available while petitioner was in the penitentiary. In imposing concurrent sentences of 10 years to 20 years on the four attempt murder counts and a concurrent sentence of 4 years to 5 years on the aggravated battery count, the court expressly took into consideration petitioner's potential for rehabilitation.

■■ In a recent opinion (*People v. Johnson,* 29 Ill.App.3d 763, 331 N.E.2d 306), this court reviewed the factors which a sentencing court as of 1974, must take into account, including the rehabilitation factor. In the instant case, our review of the transcript of the 1966 hearing in aggravation and mitigation, at the conclusion of which the court imposed the sentences involved, leads us to conclude that the court fully complied with all sentencing requirements, expressly taking the rehabilitation factor into account. We conclude further that the sentences were within the statutory limits and were not excessive. It follows that the allegation complaining of the sentences does not raise an issue so patently meritorious that the failure of appellate counsel to raise the issue on direct appeal constituted incompetence of appellate counsel.

The allegation that petitioner was not at fault in any way in the dis-

missal of his direct appeal merely complements his allegation that his appeal was dismissed owing solely to the negligent omissions of his appellate counsel. The two allegations, therefore, constituted a single compound allegation that petitioner was denied effective assistance of appellate counsel and that appellate counsel was incompetent. This is the allegation in the instant post-conviction petition which raised an issue of constitutional dimension, the sufficiency of which we are testing by reviewing the other allegations for patent meritoriousness.

The final allegation of the incompetence of trial counsel for failing to see to it that the jury was properly instructed as to the charge of attempt murder and as to the defense of insanity has no merit since we have decided that the instructions were adequate.

In summary, then, we find that none of petitioner's allegations was so patently meritorious as to constitute incompetence on the part of appellate counsel whose negligent omissions had precluded the petitioner from raising the issues on direct appeal. Accordingly, we find no error in the dismissal of petitioner's post-conviction petition without an evidentiary hearing, and we affirm that dismissal.

One further matter remains. In *People v. Aliwoli*, our supreme court court:

> "From the available documents it appears that the appeal was dismissed solely due to the neglect of the defendant's attorney. In the attorney's last motion for an extension, he represented to the appellate court that the brief and abstract were completed and that they would be filed as soon as they were printed. Yet no further action was taken by the attorney during the three months that followed the expiration of that extension [at which time the appellate court dismissed the appeal]. The record discloses only an unexplained silence on the part of the defendant's attorney after the final extension of time was granted. From the facts available to us it would appear that the defendant's attorney was guilty of negligence in prosecuting this appeal. We are referring the facts in this case to the Attorney Registration and Disciplinary Commission for investigation and possible action." (60 Ill.2d 579, 582.)

In *Aliwoli*, the State Appellate Defender moved in the appellate court to reinstate the appeal. When the motion was denied, the supreme court granted leave to appeal, held that the denial of the motion to reinstate was an abuse of discretion on the part of the appellate court, and reversed and remanded to the appellate court with direction to reinstate the appeal.

In the instant case, the petition for leave to appeal was denied, so that the post-conviction petitioner lost his right to appeal. His relevant post-conviction allegation was that he was deprived of that right without

any fault on his part and owing solely to the ineffective assistance of appellate counsel in failing to prosecute the appeal. It is mere happenstance that this allegation, while raising an issue of constitutional dimension cognizable in this post-conviction proceeding, was properly dismissed without an evidentiary hearing because we have found herein that none of the issues which were to have been raised on appeal was patently meritorious.

After initially being represented on his direct appeal by his trial counsel, petitioner was then represented by successor counsel who obtained the last seven extensions of time for the filing of the brief, and who filed all the motions in the appellate court after its dismissal of the appeal and who filed the petition for leave to appeal to the supreme court. In obtaining the last extension of time (allowed in part to 15 July 1970 and marked final), successor counsel stated that still another attorney had been retained by him for the preparation of the brief. In the motion to vacate the dismissal of the appeal, counsel explained that he and the attorney working with him had each thought the other was to move for another extension of time, with the result that neither did so. In the motion to reconsider the refusal to vacate the dismissal, counsel stated that he and his associate apologize to the court for their negligence.

The associate then represented petitioner in the post-conviction proceeding in the instant appeal. In the oral argument on this appeal, the associate made the point that the petitioner and former appellant should not be penalized for the negligence of his appellate counsel, but rather appellate counsel should bear the consequences of his own negligence.

■■ From the facts available to us, it would appear that petitioner's successor counsel on the direct appeal may have been guilty of negligence in the prosecution of the appeal. We are, therefore, referring the facts as to his acts and omissions in the direct appeal to the Attorney Registration and Disciplinary Commission for investigation and possible action. See also *People v. Thornhill,* 31 Ill.App.3d 779, 333 N.E.2d 8.

Judgment of dismissal affirmed.

DOWNING, P. J., and LEIGHTON, J., concur.