**UNITED STATES ex rel. Carlos AVILA, Petitioner,**

v.

**Rodney AHITOW, Warden, Illinois River Correctional Center, et al., Respondents.**

No. 91 C 7326.

United States District Court, N.D. Illinois, E.D.

March 26, 1992.

Aug. 4, 1983, *reprinted in* 1984 U.S.C.C.A.N. 3182, 3311–12.

Carlos Avila, pro se.

Marcia L. Friedl, Terence Madsen, Illinois Atty. General's Office, Chicago, Ill., for respondents.

**MEMORANDUM OPINION AND ORDER**

ASPEN, District Judge:

Petitioner Carlos Avila seeks a writ of habeas corpus under 28 U.S.C. § 2254. Respondents now move to dismiss Avila's petition for failure to exhaust available state remedies prior to seeking federal relief as required by 28 U.S.C. § 2254(b). For the reasons as set forth below, respondents'

motion to dismiss is granted without prejudice.

## I.

Following a bench trial, Avila was convicted of the attempted murder of Felix Reyes—a member of the Latin Kings street gang—and sentenced to fifteen years in prison. The following facts supporting the conviction are taken from the opinion of the appellate court on direct review, and are presumed accurate. 28 U.S.C. § 2254(d) (1988).

About 6 p.m. on November 15, 1987, [Reyes] was standing on the brightly lighted corner of Division and Wolcott in Chicago with several friends when a gray two-door Pontiac Grand Prix stopped there. Reyes was about four feet away from the passenger side of the car, and he was able to see that defendant was a passenger. Defendant made a hand gesture signifying that he was a Latin King, and Reyes confirmed his gang affiliation with a hand signal before he turned away from the defendant. At this point someone yelled, "they got a gun," and shots were fired. Reyes was hit three times and underwent surgery. At trial Reyes expressed his opinion that defendant was actually a member of a rival gang.

David Rolon was standing across the well-lighted street from Reyes when the Grand Prix arrived. He heard the occupants yell "Folks" indicating that they were rival gang members. The driver of the Grand Prix got out, placed his arm on the car roof in firing position and fired a small chrome-colored gun. Meanwhile, the passenger fired a gun about five times. When the Grand Prix was driven away, it turned at the intersection and Rolon noted the license plate number of the car and gave that number to investigating officers. About five hours after the shooting Rolon viewed a lineup and identified defendant.

Shortly after the shooting police checked the plate number of the suspect vehicle and found that it was registered to defendant. They also found the defendant's Grand Prix parked on a street. Several officers went to the address listed on the registration where defendant's parents gave police written permission to search their apartment. In a bedroom police recovered an unloaded .25 caliber nickel-plated semi-automatic pistol, a box containing 10 rounds of .25 caliber bullets; a blue steel .38 caliber revolver containing expended shells and a third pistol containing both live and expended bullets. A search of the front of the passenger compartment of defendant's car disclosed several .25 caliber shell casings.

Attorney John Klunk accompanied defendant to the police line station on the evening of the shooting. He witnessed the lineup procedure and testified that David Rolon did not identify anyone from the lineup in Klunk's presence and specifically told Klunk that he could not identify anyone. According to Klunk, he spoke to Rolon on the day of trial and Rolon told him that he did not identify anyone at the lineup.

In finding defendant guilty of attempted murder the trial court found that Rolon's identification of defendant had been impeached, but the court noted that Rolon had provided police with defendant's license plate number, and that vehicle contained expended shell casings. Also the court remarked that police found guns in defendant's apartment.

On appeal, Avila argued that his trial counsel rendered ineffective assistance by (1) failing to object to the introduction of the weapons into evidence, and (2) failing to object to the "admittedly prejudicial and unconstitutional lineup." Rejecting Avila's contentions, the appellate court affirmed. *People v. Avila,* No. 90–0067 (Ill.App. 1st Dist. Jan. 18, 1991). In his *pro se* petition for leave to appeal to the Illinois Supreme Court, in addition to his claim of ineffective assistance of trial counsel, Avila added a claim predicated on the ineffective assistance of his appellate counsel and argued that the search of his parents' apartment violated his rights under the Fourth Amendment. On October 2, 1991, the Illinois Supreme Court denied Avila's petition

for leave to appeal the appellate court's decision. 141 Ill.2d 546, 162 Ill.Dec. 494, 580 N.E.2d 120.

Rather than pursuing post-conviction relief in the Illinois courts, pursuant to Ill. Rev.Stat. ch. 110A, ¶ 651, Avila elected to bring his claims to federal court under 28 U.S.C. § 2254. Avila raises the following grounds in support of his current habeas petition: (1) the search of his parents' apartment violated his rights under the Fourth Amendment; (2) after proper request by defendant, the state withheld favorable evidence in violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); and (3) he was denied effective assistance of trial counsel and effective assistance of counsel on appeal.

## II.

First enunciated in *Ex parte Royall,* 117 U.S. 241, 6 S.Ct. 734, 29 L.Ed. 868 (1886), the exhaustion doctrine "is grounded in principles of comity and reflects a desire to 'protect the state courts' role in the enforcement of federal law.'" *Castille v. Peoples,* 489 U.S. 346, 349, 109 S.Ct. 1056, 1059, 103 L.Ed.2d 380 (1989) (quoting *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982)). It is not, however, a jurisdictional requirement. *Id.; Granberry v. Greer,* 481 U.S. 129, 131, 107 S.Ct. 1671, 1673–74, 95 L.Ed.2d 119 (1987); *Strickland v. Washington,* 466 U.S. 668, 684, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674 (1984); *see also Bowen v. Johnston,* 306 U.S. 19, 27, 59 S.Ct. 442, 446, 83 L.Ed. 455 (1939) (the doctrine "is not one defining power but one which relates to the appropriate exercise of power"). Nonetheless, the requirement creates a "strong presumption in favor of requiring the prisoner to pursue his available state remedies." *Granberry,* 481 U.S. at 131, 107 S.Ct. at 1674. Indeed, as codified in 1948, the exhaustion rule looms as an uncompromising obstacle to state prisoners seeking federal habeas relief:

> (b) An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has a right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254(b)–(c) (1988). The Supreme Court, however, has not interpreted § 2254 in such strict terms.

In general, proper exhaustion requires the petitioner to "fairly present" the issue to the highest court of the state that possesses the power to review the question. *Smith v. Digmon,* 434 U.S. 332, 98 S.Ct. 597, 54 L.Ed.2d 582 (1978); *Brown v. Allen,* 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953) (overruled in part, not relevant here, by *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977)). If the petitioner has raised the relevant claim before the highest court of the state on direct appeal, he will not be required to raise the issue on any other avenue of relief, *i.e.,* on state post-conviction review. *Brown,* 344 U.S. at 448–49 n. 3, 73 S.Ct. at 403 n. 3; *see also United States ex. rel Falconer v. Lane,* 708 F.Supp. 202, 204 (N.D.Ill.1989). In a federal habeas petition that raises multiple claims, a petitioner must exhaust his state remedies as to all issues before the court may consider the petition. *Rose v. Lundy,* 455 U.S. 509, 522, 102 S.Ct. 1198, 1205, 71 L.Ed.2d 379 (1982).

Upon a careful review of each of Avila's claims, it is evident that at least one cognizable federal issue raised in the *pro se* petition has not been exhausted: ineffective assistance of appellate counsel. While Avila raised the issue in his petition for leave to appeal to the Illinois Supreme Court, that is insufficient for exhaustion purposes. Indeed, the United States Supreme Court in *Castille,* 489 U.S. at 351, 109 S.Ct. at 1060, held that raising a claim

for the first time in a discretionary appeal to the state's highest court, where the court declines to hear the case, does not constitute "fair presentation" for exhaustion purposes.

Of course, the exhaustion requirement will be excused under circumstances rendering the available state processes futile or ineffective. *See Castille*, 489 U.S. at 351, 109 S.Ct. at 1060 ("the requisite exhaustion may nonetheless exist ... if it is clear that respondent's claims are now procedurally barred under [state] law"); *See also Gray v. Greer*, 707 F.2d 965, 967 (7th Cir.1983); *Perry v. Fairman*, 702 F.2d 119, 130–31 (7th Cir.1983). In *Gray*, the Seventh Circuit held that the Illinois post-conviction statute is an ineffective remedy "in circumstances where the Illinois courts strictly apply the doctrine of res judicata or waiver in post-conviction motions." *Gray*, 707 F.2d at 967. Accordingly, "[a] petitioner need not pursue a petition for post-conviction relief in order to exhaust a constitutional claim where there is not direct precedent indicating that the Illinois courts will relax the waiver rule." *Id.* at 968.

The Seventh Circuit in *United States ex rel. Clauser v. Shadid*, 677 F.2d 591 (7th Cir.1982), confronted circumstances virtually identical to those at hand—*i.e.*, the petitioner raised the issue of ineffective assistance of appellate counsel without first presenting the issue to the Illinois courts in a post-conviction proceeding. Finding direct precedent indicating that the Illinois courts would relax its waiver rule, allowing claims of ineffective assistance of counsel in the petitioner's first petition for post-conviction relief, the Seventh Circuit held that the petitioner failed to exhaust his state remedies. *Id.* at 594 (citing *People v. Frank*, 48 Ill.2d 500, 272 N.E.2d 25 (1971); *People v. Edgeworth*, 30 Ill.App.3d 289, 332 N.E.2d 716 (1975); *People v. Rooney*, 16 Ill.App.3d 901, 307 N.E.2d 216, *cert. denied*, 419 U.S. 1025, 95 S.Ct. 503, 42 L.Ed.2d 300 (1974)).

Accordingly, as Avila has not "fairly presented" his claim of ineffective assistance of appellate counsel to the Illinois Supreme Court and there is direct precedent indicating the claim is cognizable in a state post-conviction proceeding, we dismiss Avila's petition without prejudice for failure to exhaust state remedies.

### III.

Avila's petition for writ of habeas corpus is dismissed without prejudice for failure to exhaust available state-court remedies. It is so ordered.